UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARGARET LEPORE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FIRST NATIONAL BANK, <br><br> Defendant. | Civil Action No. <br><br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Margaret Lepore (hereinafter, "Plaintiff"), individually and on behalf of all others similarly situated, bring this Class Action Complaint (the "Complaint") against First National Bank (hereinafter "Defendant"), and alleges, upon personal knowledge as to her own conduct, and upon information and belief as to the conduct of others, as follows:

### INTRODUCTION

1. Plaintiff brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant, in negligently and willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq*., ("TCPA") and related regulations, thereby invading Plaintiff's privacy.

### JURISDICTION AND VENUE

2. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of the TCPA, which is a federal statute.

3. The Court has personal jurisdiction over Defendant because Defendant conducts business in the State of Michigan. At all times relevant herein, Defendant conducted business in the State of Michigan, and within this judicial district.

4. Personal jurisdiction and venue are proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of herein occurred within this judicial district; and (2) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on her cellular telephone utilizing an artificial or prerecorded voice without Plaintiff's consent in violation of the TCPA, while Plaintiff resided in Utica Michigan, which is within this judicial district.

## PARTIES

5. Plaintiff is, and at all times mentioned herein is a resident of the State of Michigan, County of Macomb.

6. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

7. Defendant is a banking institution with a principal place of business and/or corporate headquarters located in Sioux Falls, South Dakota.

8. Defendant is, and at all times mentioned herein were a "person," as defined by 47 U.S.C. § 153(39).

9. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of Michigan and within this judicial district.

10. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was

committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## LEGAL BASIS FOR THE CLAIMS

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines.

13. The TCPA also specifies several technical requirements for fax machines, autodialers, and voice messaging systems – principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

14. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption.

15. Therefore, all pre-recorded telemarketing calls to residential lines and all pre-recorded calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

16. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members of the National Do Not Call Registry.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

4

17. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

18. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

19. With respect to misdialed or wrong-number calls, the FCC clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id*. Thus, any second call placed to a wrong number violates the TCPA.

20. The TCPA also established the National Do-Not-Call Registry, as well as the requirement that all businesses that place calls for marketing purposes maintain an "internal" Do-Not-Call list ("IDNC list"). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id*. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. *Id*. at §

5

64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC violates the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

## FACTUAL ALLEGATIONS

21. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

22. At all times relevant, Plaintiff is an individual residing within the State of Michigan.

23. At all times relevant Defendant conducted business in the State of Michigan and in the County of Macomb, within this judicial district.

24. Sometime prior to this action, Plaintiff allegedly incurred a financial obligation, allegedly with Defendant, which was money, property, or their equivalent, which was due or owing, or alleged to be due or owing, from a natural person to another person (the "Debt").

25. In Defendant's overzealous attempt to collect the alleged outstanding Debt, Defendant willfully and knowingly called Plaintiff numerous times.

26. At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in 0428 ("Cell Phone").

27. Plaintiff is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to her Cell Phone.

28. Plaintiff's Cell Phone is assigned to her as her personal cellular telephone.

29. Between July 2024, and September 2024, Defendant placed numerous calls to Plaintiff on her Cell Phone.

30. On July 8, 2024, Plaintiff, through counsel, sent a letter of representation to Defendant via fax, notifying Defendant that Plaintiff was legally represented by an attorney and demanding Defendant to cease any further direct communication with Plaintiff. The letter further

informed Defendant that any alleged consent to contact Plaintiff using an artificial or prerecorded voice was thereby revoked.

31. Despite Plaintiff's counsel having sent Defendant the letter of representation via fax and Defendant having received the letter of representation, Defendant continued to contact Plaintiff directly via telephone using an artificial or pre-recorded voice, attempting to collect the alleged Debt from Plaintiff.

32. Specifically, on September 10, 2024, Plaintiff received a telephone call from Defendant utilizing an artificial or pre-recorded voicemail message from the phone number (877) 205-1849. Upon information and belief, this number belongs to or is used by Defendant and/or Defendant's agent. The voicemail stated, "this is an important message from First National Credit Card," and instructed Plaintiff to return the call to "(888) 883-9833 between the hours of 7 a.m. to 9 p.m., central standard time."

33. Plaintiff continued to receive additional telephone calls from Defendant utilizing an artificial or pre-recorded voicemail message from the the phone number (877) 205-1849, which were identical to the September 10, 2024 voicemail message, on September 11, 2024, September 16, 2024, September 17, 2024, and September 18, 2024.

34. On September 19, 2024, Plaintiff's counsel sent a second letter of representation to Defendant via fax, notifying Defendant for the second time that Plaintiff was legally represented by an attorney and demanding Defendant to cease any further direct communication with Plaintiff. The letter further informed Defendant, for the second time, that any alleged consent to contact Plaintiff using an artificial or prerecorded voice was revoked.

35. Despite Plaintiff's counsel having sent Defendant the second letter of representation via fax and Defendant having received the second letter of representation, which included an express revocation of any alleged consent to contact Plaintiff using an artificial or

7

prerecorded voice, Defendant continued to contact Plaintiff attempting to collect the alleged Debt from Plaintiff and made numerous calls to Plaintiff's telephone using an artificial or prerecorded voice.

36. Specifically, on September 20, 2024, September 24, 2024, and September 25, 2024, Plaintiff received additional telephone calls from Defendant utilizing an artificial or pre-recorded voicemail message from the phone number (877) 205-1849, identical to the September 10, 2024 voicemail message from Defendant.

37. Defendant used an artificial or prerecorded voice to place its daily calls to Plaintiff seeking to collect the Debt allegedly owed allegedly by Plaintiff.

38. Defendant called Plaintiff on her cellular telephone with enough frequency to constitute harassment under the circumstance.

39. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

40. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

41. Defendant never received Plaintiff's "prior express consent" to receive calls using an artificial or prerecorded voice on her cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

42. Defendant ignored Plaintiff's requests and continued to call Plaintiff's phone number despite no prior written consent from Plaintiff and Plaintiff's clear revocation of any alleged prior consent.

43. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone calls in violation of the regulations prescribed under 47 U.S.C. § 227(b).

44. Upon information and belief, Defendant made the same or substantially similar above-described telephone calls utilizing an artificial or prerecorded voice *en masse* to thousands of consumers nationwide.

45. Because Plaintiff is alerted when a call is made to Plaintiff's Cell Phone, the unsolicited telephone calls that Defendant transmitted to Plaintiff's cellular device invaded Plaintiff's privacy, was a nuisance, and distracted and aggravated Plaintiff upon receipt.

46. Receiving Defendant's unauthorized calls drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on her phone and battery.

47. Plaintiff was personally affected and damaged by Defendant's aforementioned conduct because Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically protected by the TCPA. Plaintiff was frustrated that Defendant annoyed Plaintiff with unwanted telephonic calls, without Plaintiff's prior express written consent.

48. Defendant's telephonic communications forced Plaintiff and Class members to live without the utility of their cellular telephones by forcing Plaintiff and Class members to silence their cellular telephones and/or block incoming numbers and/or interrupted their desired use of their cellular telephones.

49. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant makes such calls using an automated dialing system to consumers without their consent, Defendant fails to respect the limitations imposed by the TCPA.

50. Through this conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

51. Defendant's violations caused Plaintiff to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use,

9

and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent.

52. Through this conduct of placing collection calls to Plaintiff after Defendant did not have consent to contact Plaintiff and was clearly notified in writing to stop its communications with Plaintiff, Defendant violated the TCPA.

53. As a result of Defendant's unfair, oppressive, and abusive conduct in connection with their debt collection activity, Plaintiff has suffered mental anguish by way of stress, frustration, and anxiety over Defendant's continued collection attempts and communications to Plaintiff.

54. As a result of Defendant's actions, omissions, and failures to act, Plaintiff has suffered actual and consequential damages, and is entitled to recover actual, consequential, and punitive damages against Defendant, including her emotional damages and mental anguish, stress, embarrassment, and humiliation, each in an amount to be determined at trial.

## CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure individually and on behalf of the following Class:

> All persons within the United States who received any collection telephone calls from Defendant to said person's cellular telephone made utilizing an artificial or prerecorded voice and such person had not provided prior express consent to receive such calls on their cellular telephone number from Defendant within the four years prior to the filing of the Complaint.

56. Plaintiff reserves the right to modify the definitions of the Classes as warranted as facts are learned in further investigation and discovery.

57. Defendant, and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the members number in the thousands,

if not more.  Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

58. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones using an artificial or prerecorded voice, without their prior express consent, thereby invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

59. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

60. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court.  The Class can be identified through Defendant's records or Defendant's agents' records.

61. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact common to the Class predominate over questions which may affect individual Class members, including the following:

   a. What is Defendant's conduct, pattern, and practice is as it pertains to making calls with an artificial or prerecorded voice;

   b. Whether, within the four years prior to the filing of this Complaint Defendant or its agents placed phone calls to consumers using an artificial or prerecorded voice to any telephone number assigned to a cellular phone service;

11

c. Whether Defendant obtained prior express written consent to place telephone calls to Plaintiff or the Class members' telephones;

d. Whether Defendant's conduct violated the TCPA;

e. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

f. Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct; and

g. Whether Defendant should be enjoined from engaging in such conduct in the future. As a person who received numerous telephone calls from Defendant after revoking consent for any such calls, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

62. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

63. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

64. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for

violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

65. Defendant have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENT VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227, *ET SEQ.*
### (On Behalf of Plaintiff and the Class)

66. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

67. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 et seq.

68. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class Members are entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

69. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### COUNT II
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227, *ET SEQ.*
### (On Behalf of Plaintiff and the Class)

70. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 et seq.

72. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class members are entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

73. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Defendant:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel.
- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);
- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendant's violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(B);
- Statutory damages of $1,500.00 for Plaintiff and each member the Class for each and every one of Defendant's willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(C);
- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues so triable.

Dated: April 17, 2025                                   Respectfully submitted,

By: /s/ Abbas Kazerounian
Abbas Kazerounian, Esq. (P80433)
**KAZEROUNI LAW GROUP, APC**
245 Fischer Ave., Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*